### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF DELAWARE

EDWARD MCNALLY, on behalf of himself
and all others similarly situated,

               Plaintiff,

     v.

RETAILMENOT, INC., C. THOMAS BALL,
JEFFREY M. CROWE, ERIC KORMAN,
JULES A. MALTZ, GOKUL RAJARAM,
GREG J. SANTORA, BRIAN H. SHARPLES,
TAMAR YEHOSHUA, and G. COTTER
CUNNINGHAM,

               Defendants.

Case No. 1:17-cv-00550

**CLASS ACTION**

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION
### FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Dated: May 26, 2017

**FARUQI & FARUQI, LLP**
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

I.    BACKGROUND ......................................................................................2

    A.    The Merger is Announced ...................................................................2

II.    LAW AND ARGUMENT .........................................................................4

    A.    Plaintiff's Counsel Are Entitled to Attorneys' Fees and Expenses ........................4

        1.    The Suit Was "Meritorious" When Filed....................................................5

        2.    A Substantial Benefit Was Conferred Upon the Class ...............................7

            a.    The Supplemental Disclosures Benefited Stockholders .................7

            b.    Supplemental Disclosures Corrected the Forecasts ......................8

            c.    The Supplemental Disclosures Regarding Qatalyst's Analyses......................................................................................11

            d.    The Supplemental Disclosures Explained the Sales Process.........14

        3.    This Action and the Benefit Are Causally Related....................................16

    B.    The Requested Fee and Expenses Award Is Reasonable.......................................18

        1.    The Additional Material Information Benefited Stockholders .................18

III.    CONCLUSION....................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*In re Appraisal of the Orchard Enters., Inc.*,
  No. 5713-CS, 2012 Del. Ch. LEXIS 165 (Del. Ch. July 18, 2012) ........................................ 13

*Arnold v. Soc'y for Sav. Bancorp*,
  650 A.2d 1270 (Del. 1994) ...................................................................................................... 14

*In re Beverly Hills Fire Litig.*,
  639 F. Supp. 915 (E.D. Ky. 1986) .......................................................................................... 20

*Biver v. Nicholas Fin., Inc.*,
  No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933 (M.D. Fla. May 30, 2014) ........ 12

*Brown v. Brewer*,
  No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) ............. 8, 10

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .................................................................................................. 10

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................................... 19

*Cooperstock v. Pennwalt Corp.*,
  820 F. Supp. 921 (E.D. Pa. 1993) .................................................................................. *passim*

*In re Countrywide Corp. S'holders Litig.*,
  C.A. No. 3464, 2009 Del. Ch. LEXIS 158 (Del. Ch. Aug. 28, 2009) ...................................... 7

*David P. Simonetti Rollover IRA v. Margolis*,
  No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) ....................................... 12

*Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*,
  932 F.2d 591 (7th Cir. 1991) .................................................................................................. 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................................. 20

*In re Hot Topic, Inc. Sec. Litig.*,
  No. CV 13-02939, 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) ........................ 10

*In re IBM Corporate Sec. Litig.*,
  163 F.3d 102, 110 (2d Cir. 1998) ............................................................................................ 10

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) ................................................................................................................. 11

*Kahan v. Rosenstiel*,
424 F.2d 161 (3d Cir. 1970).................................................................5, 7

*Koehler v. Net Spend Holdings Inc.*,
No. 8373-VCG, 2013 Del. Ch. LEXIS 131 (Del. Ch. May 21, 2013)...................................16

*Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*,
No. 5002-CC, 2009 Del. Ch. LEXIS 210 (Del. Ch. Nov. 18, 2009) .......................................12

*Lealao v. beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) ..................................................................19

*Lewis v. Gen. Emp't Enters.*,
No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 10, 1992)................................17

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ................................................................5

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
11 A.3d 1175 (Del. Ch. 2010)................................................................13

*Matador Capital Mgmt. Corp. v. BRC Holdings*,
729 A.2d 280 (Del. Ch. 1998)................................................................6

*Nagy v. Bistricer*,
770 A.2d 43 (Del. Ch. 2000)................................................................14

*In re Netsmart Tech., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007)................................................................7, 12

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
No. 14-68-RGA, 2015 U.S. Dist. LEXIS 85510 (D. Del. July 1, 2015) ...................................9

*In re Plains Res., Inc. S'holders Litig.*,
C.A. No. 071-N, 2005 Del. Ch. LEXIS 12 (Del. Ch. Feb. 4, 2005) .......................................20

*In re Pure Res., Inc. S'holders Litig.*,
808 A.2d 421 (Del. Ch. 2002)................................................................6, 7, 13

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ................................................................20

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
C.A. No. 2213, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009)............................................20

*In re Sauer-Danfoss Inc. S'holders Litig.*,
65 A.3d 1116 (Del. Ch. 2011)................................................................7

*Schulein v. Petroleum Dev. Corp.*,
   No. SACV 11-1891 AG (ANx),
   2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) ....................................................10

*Smith v. Robbins & Myers*,
   969 F. Supp. 2d 850, 872-74 (S.D. Ohio 2013) ........................................................................14

*Swope v. Siegel-Robert, Inc.*,
   74 F. Supp. 2d 876 (E.D. Mo. 1999)........................................................................................13

*In re Talley Indus. Inc., S'holders Litig.*,
   Consol. C.A. No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998)............................8

*Tandycrafts, Inc. v. Initio Partners*,
   562 A.2d 1162 (Del. 1989) .........................................................................................................5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................19

*In re Topps Co. S'holders Litig.*,
   926 A.2d 58 (Del. Ch. 2007).............................................................................................13, 16

*TSC Industries v. Northway, Inc.*,
   426 U.S. 438 (1976).....................................................................................................................8

*United Vanguard Fund, Inc.* v. *TakeCare*, Inc.,
   727 A.2d 844 (Del. Ch. 1998)...................................................................................................17

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................................................19

*Va. Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991)...................................................................................................................7

*In re Wayport, Inc. Litig.*,
   76 A.3d 296, 323-24 (Del. Ch. 2013) ........................................................................................10

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997).......................................................................................................10

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th, 224 (2001) .....................................................................................................19

*In re Xerox Corp. Sec. Litig.*,
   935 F. Supp. 2d 448 (D. Conn. 2013)........................................................................................10

**Statutes**

15 U.S.C. § 78n(a) ...............................................................................................................................7

iv

**Other Authorities**

17 C.F.R. § 244.100 ..................................................................................................................11

Steven M. Davidoff,
   *Fairness Opinions*, 55 Am. U.L. Rev. 1557 (2006) ..............................................................12

Elizabeth MacDonald,
   The Ebitda Folly, Forbes (Mar. 17, 2003) ..............................................................................9

*Keynote Address, International Corporate Governance Network Annual Conference:*
   *Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity,*
   *Non-GAAP, and Sustainability* (June 27, 2016) ....................................................................11

Plaintiff Edward McNally ("Plaintiff"), through undersigned counsel, respectfully submits this memorandum in support of Plaintiff's Counsel's Application for Attorneys' Fees and Expenses.  Plaintiff commenced this Action to challenge the acquisition of RetailMeNot, Inc. ("RetailMeNot" or the "Company") by Harland Clarke Holdings Corp. ("Harland Clarke") through an all-cash tender offer (the "Tender Offer").   Plaintiff alleged that Defendants recommended that stockholders tender their shares for the $11.60 Merger Consideration through a Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") that was false and/or misleading among other reasons, in its reporting of certain non-GAAP financial measures that failed to comply with mandates under Securities and Exchange Commission ("SEC") Regulation G (17 C.F.R. § 244.100) that requires that non-GAAP financial measures be reconciled with the GAAP equivalent measures.  Only after Plaintiff commenced this Action, and moved to enjoin the Tender Offer on an expedited basis to obtain a hearing prior to the May 22, 2017 expiration of the Tender Offer, did Defendants finally correct the material reporting deficiencies identified by Plaintiff by issuing supplemental disclosures (the "Supplemental Disclosures") described below.[1]  The Supplemental Disclosures provided stockholders with material information that corrected the deficiencies identified by Plaintiff in the Recommendation Statement, which were the basis for his motion to enjoin the expiration of the Tender Offer.  Plaintiff's Counsel now

---

[1]      Indeed, two other actions styled *Scarantino v. RetailMeNot, Inc. et al*, No. 1:17-cv-00474-GMS (filed Apr. 26, 2017) ("Scarantino Action") and *Boening v. RetailMeNot, Inc. et al*, No. 1:17-cv-00545-GMS (filed May 10, 2017) ("Boening Action"), were commenced prior to Plaintiff's action but did not seek an injunction, and Defendants failed to remedy the false and/or misleading 14D-9 until after this Action was filed along with a motion for preliminary injunction.

seek a modest fee and expense award based on their efforts, which they allege caused the issuance of the Supplemental Disclosures and benefited the RetailMeNot stockholders.[2]

Plaintiff sought to meet and confer with Defendants[3] regarding a reasonable fee, but counsel for Defendants would not discuss the issue.[4]   Accordingly, Plaintiff files the instant motion requesting this Court to award fees and expenses of $250,000 ("Fee and Expense Award") on the grounds that Plaintiff's Counsel's efforts caused Defendants to disclose the Supplemental Disclosures to RetailMeNot's stockholders prior to the expiration of the Tender Offer, which disclosures not only conveyed a substantial benefit to stockholders when deciding whether to follow the Board's recommendation to tender their shares, but also brought the Company into compliance with SEC regulations.   As discussed below, this Fee and Expense Award is reasonable and warranted based on the relief obtained and time and expenses Plaintiff's Counsel invested in this Action.

## I.   BACKGROUND

### A.   The Merger is Announced

On April 10, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), by which Harland Clarke would commence a tender offer that expired on May 22, 2017.   ¶ 3.[5]   Under Section 251(h) of the Delaware General Corporation

---

[2]   The Tender Offer expired on May 22, 2017 with the requisite number of shares had been tendered.   *See* Amendment No. 6 Recommendation Statement, filed May 23, 2017, at www.sec.gov/Archives/edgar/data/1475274/000156761917001115/s001645x14_sc14d9a.htm.

[3]   Defendants include the RetailMeNot Board of Directors C. Thomas Ball, Jeffrey M. Crowe, Eric Korman, Jules A. Maltz, Gokul Rajaram, Greg J. Santora, Brian H. Sharples, Tamar Yehoshua and G. Cotter Cunningham (collectively, the "Individual Defendants.").

[4]   *See* Exhibit A, Declaration of Michael Van Gorder in Support of Plaintiff's Application for an Award of Attorneys' Fees and Expenses ("Van Gorder Decl.").

[5]   Citations to "¶ _," are to Plaintiff's Complaint (the "Complaint") filed on May 11, 2017. Unless defined herein, capitalized terms shall have the same meaning as in the Complaint.

Law, the Merger would be consummated without a stockholder vote if, after expiration of the Tender Offer, more than 50% of RetailMeNot's outstanding shares were tendered.

On April 24, 2017, the tender offer commenced and Defendants caused the filing of a Schedule 14D-9 Solicitation/Recommendation Statement ("14D-9") with the SEC as well as the dissemination of the 14D-9 to stockholders in support of the Tender Offer.  ¶ 37.  Defendants recommended that stockholders tender their shares based on various factors, which as further discussed below, Plaintiff alleged were false and/or misleading under Section 14(e) and SEC Rule 14d-9 promulgated under Section 14(d)(4) of the Williams Act.  As a result of the incomplete and misleading 14D-9, RetailMeNot shareholders were unable to make an informed decision regarding tendering their shares in connection with the Transaction.  The tender offer expired at midnight on May 22, 2017.  Van Gorder Decl., Ex. B, 14D-9.

As mentioned, three putative stockholder class actions complaints were filed in this Court (the "Actions").[6]  The Actions alleged that the 14D-9 was materially false and/or misleading because it omitted critical and material information, including information relied on by the Board in recommending shareholders tender in favor of the transaction and by the Company's financial advisor, Qatalyst Partners LP ("Qatalyst"), in rendering its fairness opinion.  ¶ 42.  Specifically, Plaintiff alleged that the 14D-9 was false and/or misleading due to the omission of material information concerning: (i) the sale process (¶ 39); (ii) potential conflicts of interest by RetailMeNot's management and directors (¶¶ 40-41); (iii) Qatalyst's valuation analyses (¶¶ 43-46); and (iv) the Company's financial projections (¶ 50).  The Complaint also alleged this information would have significantly altered the total mix of information available.

---

[6]     The Scarantino Action and the Boening Action also named Harland Clarke as a Defendant.

Plaintiff also moved to enjoin the Transaction unless and until the Defendants issued corrective disclosures to address the allegations in the Complaint and sought an expedited hearing schedule on the motion for a preliminary injunction (the "Injunction Motion"). Van Gorder Decl. ¶ 4. Later that evening, Plaintiff's Counsel provided Defendants' counsel with the Complaint and the Injunction Motion as well as called Defendants' Counsel. Defendants' counsel responded representing they would reach out after internal discussion. Van Gorder Decl., Ex. C.

On May 12, 2017, the Company filed Amendment No. 4 to the 14D-9, reflecting additional material disclosures (the "Supplemental Disclosures") that addressed and mooted Plaintiff's Injunction Motion. Van Gorder Decl., Ex. D. Notably, Defendants had not addressed the alleged disclosure violations until after the filing of Plaintiff's Injunction Motion and informed Plaintiff's counsel that they had no agreement with the earlier cases to make supplemental disclosures. Van Gorder Decl., Ex. E. As a result of the Supplemental Disclosures, on May 14, 2017, Plaintiff withdrew his Motion for Preliminary Injunction as moot.

Plaintiff's Counsel now move for an award of attorneys' fees and expenses on the grounds that Plaintiff's Counsel's efforts were the cause for Defendants' disclosure of additional material information to stockholders before the Tender Offer expired. As discussed below, this Fee and Expense Award is reasonable and warranted based on the relief obtained and time and expenses Plaintiff's Counsel invested in this Action.

## II.     LAW AND ARGUMENT

### A.     Plaintiff's Counsel Are Entitled to Attorneys' Fees and Expenses

It is well-settled that attorneys' "fees may be awarded where the attorney has conferred a benefit on others through undertaking the risks and expense of bringing suit." *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923 (E.D. Pa. 1993) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)).

This well recognized exception, known as the "common benefit" or "common fund" equitable doctrine, is premised upon the rationale that it would be unfair to require one party to bear the entire expense which results in the benefit to a large class of persons. To prevent this inequitable result, a court may assess fees against the entire fund and thereby spread the litigation costs proportionally. The award of attorneys' fees is not limited to circumstances in which there is a monetary fund from which fees may be paid, but extends to any situation in which the litigation has "conferred a substantial benefit on the members of an ascertainable class."

*Cooperstock*, 820 F. Supp. at 923 (citation omitted) (quoting *Mills,* 396 U.S. at 393-94).

These principles apply even where the corporate benefit is entirely non-pecuniary, as the absence of "a specific monetary recovery does not prevent an award of attorneys' fees." *See Maher v. Zapata Corp.*, 714 F.2d 436, 457 n.38 (5th Cir. 1983) (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989) (counsel entitled to reasonable fee award where efforts result in corporate benefit).

Where, as here, Defendants take steps to address and moot a representative action such as this, attorneys' fees should be awarded if: "(1) the action was 'meritorious' at the time of filing; (2) a substantial benefit was conferred to an ascertainable class; and (3) a causal connection existed between the action and the benefit." *Cooperstock*, 820 F. Supp. at 923.

### 1.    The Suit Was "Meritorious" When Filed

"In order to recover attorney's fees, it is not necessary that suit be brought to successful completion. . . ." *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970), *cert. denied*, 398 U.S. 950 (1970), *superseded by statute on other grounds as stated in Moody v. Sears Roebuck & Co.*, 664 S.E.2d 569, 576 (N.C. App. 2008).  Indeed, attorneys' fees have been awarded "although it was not yet determined what relief if any [Plaintiff] could obtain." *Id.*[7]  Rather, a claim is considered "meritorious" when filed "'if it can withstand a motion to dismiss on the pleadings and

---

[7]    Fees have even been awarded when suit was not even commenced. *See Kahan*, 424 F.2d at 167 n.7.

if, at the same time, the [Plaintiff] possesses knowledge of provable facts that hold out some reasonable likelihood of ultimate success.'" *Cooperstock*, 820 F. Supp. at 924; *see also Kahan*, 424 F.2d at 167 ("In several cases which became moot, courts have said suits were 'meritorious' if they could have survived a motion to dismiss."). Importantly, "'[i]t is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.'" *Cooperstock*, 820 F. Supp. at 924.

Here, that standard is easily met, and confirmed by Defendants' curative actions in issuing the Supplemental Disclosures. As outlined above, Plaintiff raised claims that the original offer prices were inadequate. ¶ 35. Similarly, Plaintiff alleged that Defendants omitted material information that rendered 14D-9 false and/or misleading, including material information on the sales process (¶ 39), conflicts of interest (¶¶ 40-41), the financial analyses conducted by Qatalyst (¶¶ 43-46), and the Company's intrinsic value (i.e., the projected free cash flows). ¶ 50.

Amendment No. 4 to the 14D-9, filed with the SEC on May 12, 2017, directly addressed Plaintiff's allegations that the original 14D-9 was false and/or misleading. As important, "[stockholders] are entitled to a balanced and truthful recitation of events, not a sanitized version that is materially misleading." *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 451 (Del. Ch. 2002); *Matador Capital Mgmt. Corp. v. BRC Holdings*, 729 A.2d 280, 296 (Del. Ch. 1998) ("'[A] fiduciary's duty is best discharged through a broad rather than a restrictive approach to disclosure.'" (quoting *Zirn v. VLI Corp.*, 621 A.2d 773, 779-80 (Del. 1993))). As the 14D-9 fell afoul of federal reporting requirements until it was remedied by the Supplemental Disclosures, Plaintiff's lawsuit was meritorious when filed.

6

### 2. A Substantial Benefit Was Conferred Upon the Class

#### a. The Supplemental Disclosures Benefited Stockholders

The disclosure of material information in the Supplemental Disclosures conferred substantial benefits on Plaintiff and the Class. *See Kahan*, 424 F.2d at 166 ("In *Mills*, the Supreme Court clearly extended the circumstances in which the award of attorney's fees is appropriate to situations where the 'suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid.'"); *Cooperstock*, 820 F. Supp. at 924 (citing *Mills*, 396 U.S. at 394-396) ("The 'substantial benefit' requirement[] has been interpreted broadly and has been held to include pecuniary as well as nonpecuniary gains."); *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136 (Del. Ch. 2011) (courts can give attorneys' fees for producing supplemental disclosures because "enhanced disclosure is an intangible, non-quantifiable benefit"); *In re Countrywide Corp. S'holders Litig.*, C.A. No. 3464, 2009 Del. Ch. LEXIS 158, at *2-3 (Del. Ch. Aug. 28, 2009) ("Although the benefit achieved for the class was not monetary, the supplemental and additional disclosures, which benefited the shareholders by increasing their understanding of the transaction . . . justify a fee award."). Such disclosures are considered a valuable benefit because, when stockholders are being asked to vote in connection with a transformative corporate transaction, "stockholders are entitled to disclosure of all material facts pertinent to the decisions they are being asked to make." *In re Pure Res.*, 808 A.2d at 447-48; *In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171, 199 (Del. Ch. 2007) ("Directors of Delaware corporations must 'disclose fully and fairly all material information within the board's control when they seek shareholder action.'").[8]

---

[8]     *See also* 15 U.S.C. § 78n(a); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (explaining that Section 14(a) and related rules prohibit solicitation of proxies by means of

Timely, meaningful disclosures such as those reflected in the Supplemental Disclosures can provide greater benefit to a class than money damages. Indeed, the timely disclosure of the information in the Supplemental Disclosures are "presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process." *In re Talley Indus. Inc., S'holders Litig.*, C.A. No. 15961, 1998 Del. Ch. LEXIS 53, at *46 (Del. Ch. Apr. 9, 1998).

Here, in response to Plaintiff's Action and his Counsel's efforts, Defendants disclosed additional information regarding the process that led to the Transaction, conflicts of interest, and disclosures of forecasted financial measure relied on by the Board to recommend the tender offer and the banker to render its opinion that the Transaction was fair. *See Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued.").

### b.     Supplemental Disclosures Corrected the Forecasts

Plaintiff alleged that the 14D-9 failed to adequately disclose information regarding RetailMeNot's projected financial data, including the reconciliation of certain non-GAAP (generally accepted accounting principles) financial metrics to their closest GAAP financial metrics that Qatalyst used to determine the Company's unlevered free cash flows ("UFCF")[9] on

---

materially false or misleading statements); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 448 (1976) (remedial purpose of Rule 14a-9 is to prohibit the issuance of misleading proxy statements to enable shareholders to make an informed choice).

[9]     UFCF generally is a performance measure used as an indicator of a company's ability to service and repay debt, make investments and return capital to investors, through stock repurchases and dividends. It is considered the most important insight into a company's future value and

which Qatalyst relied for certain of its valuation methodologies (used to obtain equity value ranges to value the Company for its fairness opinion).  ¶ 50.

As a result of Plaintiff's efforts, Defendants disclosed the calculus behind projected non-GAAP financial measures (i.e. Non-GAAP Operating Incoming, Adjusted EBITDA,[10] and UFCF), as well as the specific line items.  Specifically, RetailMeNot stockholders were informed that the Company included the compensation arrangements entered into in connection with the acquisition of GiftcardZen Inc. in its calculation of Adjusted EBITDA.  The Company also disclosed projections concerning Non-GAAP Operating Income, and that it was calculated by Adjusted EBITDA less depreciation.  Finally, the Company disclosed the key financial metric: the UFCF, and that the Company defines it as "Adjusted EBITDA less capital expenditures (which includes capitalization of internally [sic] development software and website development costs), cash paid for income taxes, cash paid for compensation arrangements entered into in connection with the acquisition of GiftcardZen Inc, and changes in working capital, plus depreciation."  *See* Van Gorder Decl., Ex. D at 6.

It is well-settled that management's financial projections are among the most important information a shareholder can have when evaluating the proposed consideration in a merger.  *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co*., No. 14-68-RGA, 2015 U.S. Dist. LEXIS 85510, at *20-21 (D. Del. July 1, 2015) (noting that projections were included in the proxy because

---

accurate measure of what shareholders are giving up in the future in exchange for the consideration from a merger transaction.

[10]     Often, the value in disclosing a company's non-GAAP metric of adjusted EBITDA for shareholders can be minimal or even confusing.  As Warren Buffett has stated, "References to Ebitda 'make us shudder.'  Too many investors focus on earnings before interest, taxes, depreciation and amortization. That makes sense, he said, only if you think capital expenditures are funded by the tooth fairy."  Elizabeth MacDonald, The Ebitda Folly, Forbes (Mar. 17, 2003), *available at* https://www.forbes.com/global/2003/0317/024.html.

they were provided to bidders and bankers, as required by Delaware law, and citing Delaware law); *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939, 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) (denying motion to dismiss in part based on failure to disclose unlevered free cash flows); *Schulein v. Petroleum Dev. Crop.*, No. SACV 11-1891, 2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) (denying partial summary judgment concerning disclosure related to discount rate); *Brown*, 2010 U.S. Dist. LEXIS 60863, at *70 ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. '[T]here is a substantial likelihood that a reasonable shareholder would consider it important' in making his decision."); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 485 (D. Conn. 2013) ("'[A] duty to update opinions and projections may arise if the original opinions or projections have become misleading as the result of intervening events.'").[11]

As stated above, Adjusted EBITDA, Modified EBITDA and UFCF are non-GAAP financial measures. The calculation of these metrics must be disclosed to stockholders. Specifically, the 14D-9 provided projections for non-GAAP financial metrics, including Adjusted

---

[11]    *See also In re IBM Corporate Sec. Litig.*, 163 F.3d 102, 110 (2d Cir. 1998) ("A duty to update may exist when a statement, reasonable at the time it is made, becomes misleading because of a subsequent event."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("[T]here may be room to read in an implicit representation by the company that it will update the public with news of any radical change in the company's plans" when it makes public disclosure.); *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 318 (3d Cir. 1997) ("The complaint alleges facts on the basis of which a reasonable factfinder could determine that Quaker's statements regarding its total debt-to-total capitalization ratio guideline would have been material to a reasonable investor, and hence that Quaker had a duty to update such statements when they became unreliable."); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323-24 (Del. Ch. 2013) ("A duty to speak also can arise because of statements a party previously made. A 'party to a business transaction is under a duty to . . . disclose to the other [party] before the transaction is consummated . . . subsequently acquired information that [the speaker] *knows will make untrue or misleading a previous representation that when made was true* . . . .' The fact that a statement was true when made does not enable the speaker to stand silent if the speaker subsequently learns of new information that renders the earlier statement materially misleading.")

EBITDA and Modified EBITDA, but failed to otherwise reconcile these non-GAAP projections to GAAP.  ¶¶ 48-52.  In fact, Defendants acknowledge the materially incomplete and misleading nature of said non-GAAP measures in the 14D-9: "The financial projections were [not] prepared . . . with a view toward . . . complying with generally accepted accounting principles or 'GAAP[.]'" 14D-9 at 35. Despite disclosing the misleading and materially incomplete nature of non-GAAP financial measures, Defendants failed to reconcile the non-GAAP measures disclosed, which rendered the 14D-9 materially misleading.

The failure to disclose information necessary for RetailMeNot stockholders to assess these GAAP and non-GAAP financial projections included in the 14D-9 violated Rule 14a-9 and SEC Regulation G, 17 C.F.R. § 244.100.[12]  Indeed, the SEC specifically decried the widespread use of non-GAAP financial measures in shareholder communications because such measures lack consistent definitions and are often inherently misleading.[13]

### c.      The Supplemental Disclosures Regarding Qatalyst's Analyses

Plaintiff alleged that the omission of the aforementioned projections rendered the summary of Qatalyst's *Discounted Cash Flow Analysis* ("DCF") materially incomplete and misleading, as

---

[12]      SEC Regulation G has two requirements: (1) a general disclosure requirement and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure. . ., contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure. . . not misleading." 17 C.F.R. § 244.100(b). The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

[13]      *See Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html.  The SEC lacks the manpower and resources to adequately review the numerous filings it receives, which is the very reason why the federal securities laws provide shareholders with a private right of action. *See J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964).

they relied on management's projections in rendering their DCF.  ¶ 47.  A banker's DCF analysis is among the most important valuation methodologies to determine a fair range of values for a company's equity.  *See, e.g.*, *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. 5002-CC, 2009 Del. Ch. LEXIS 210, at *1-2 (Del. Ch. Nov. 18, 2009).  To perform a DCF analysis, a banker takes management's forecasts, and then makes several key choices, "each of which can significantly affect the final valuation."  *See* Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).

As the forecasted free cash flows represent management's best estimates of the future cash flow of the corporation, the fact that Qatalyst utilized this specific Company financial data in its valuation of the Company rendered this information all the more meaningful.  *See Netsmart*, 924 A.2d at 203-04 ("[W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods . . . as well as the key inputs and range of ultimate values . . . must also be fairly disclosed.'"); *see also David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *30 (Del. Ch. June 27, 2008) ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders."); *Biver v. Nicholas Fin., Inc.*, No. 8:14-cv-250-T-33TGW, 2014 U.S. Dist. LEXIS 73933, at *13 (M.D. Fla. May 30, 2014) (denying motion to dismiss Section 14(a) claim where it was alleged that the proxy omitted material information regarding the financial advisor's analyses).

Specifically, the Supplemental Disclosures revealed that the addition of cash and cash equivalents ($224 million), and the subtraction of the Company's outstanding debt ($60 million), informed Qatalyst's DCF analysis.  Van Gorder Decl., Ex. D.  The amount of cash a corporation has on hand, measured against the amount of debt it holds, necessarily signals to stockholders the actual and/or estimated value of their holdings in a company.  *See Netsmart*, 924 A.2d at 203-04.

As a result of this Action, RetailMeNot stockholders obtained disclosure of necessary financial data that was omitted from the 14D-9 and required by federal regulation.

Plaintiff also obtained the disclosure of material information concerning Qatalyst's *Selected Transactions Analysis* and *Selected Companies Analysis*.  Specifically, the Supplemental Disclosures reflected the individual multiples utilized by Qatalyst to determine the equity value ranges from these methodologies.  Van Gorder Decl., Ex. D.  The Delaware Court of Chancery has routinely emphasized the materiality of valuation multiples such as the ones omitted from the Proxy Statement in connection with determining the fair value of a company.  *See In re Appraisal of the Orchard Enters., Inc.*, No. 5713-CS, 2012 Del. Ch. LEXIS 165, at *6-7 (Del. Ch. July 18, 2012) ("What is more important to me, though, is that Orchard's expert generated an array of comparables from which valuation multiples in the form of medians and means could be derived, but then chose multiples well below the median and mean."); *see also Pure Res.*, 808 A.2d at 449 ("The real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result.").

Indeed, it is well-settled under Delaware law that when a disclosure document "ventures into certain subjects, it must do so in a manner that is materially complete and unbiased by the omission of material facts."  *Id.* at 448; *see also In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76-77 (Del. Ch. 2007) (finding the proxy statement materially misleading for failing to explain the financial advisor's changes); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1177-78 (Del. Ch. 2010) (same).

Federal courts have followed suit in appraisal actions.  For example, in *Swope v. Siegel-Robert, Inc.*, 74 F. Supp. 2d 876, 892-893, 908 (E.D. Mo. 1999), the court repeatedly emphasized the significance of the mean, median, and range of multiples observed in determining whether the

multiples applied by a financial expert were reasonable.  In *Smith v. Robbins & Myers*, the court denied defendants' motion to dismiss plaintiff's claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, which were premised in part on the failure to disclose the individually observed multiples in connection with the financial advisor's Precedent Transactions and Comparable Companies Analyses.  The court specifically reasoned that the omitted multiples constituted material, "critical financial" information, that was necessary for the company's shareholders to make an informed decision in connection with an all-cash merger and to determine whether the financial advisor's analyses contained flaws, such as applying the lowest multiples from the range of multiples observed.  969 F. Supp. 2d 850, 872-74 (S.D. Ohio 2013).  The same, straightforward reasoning applies here – without such information, stockholders have no way of determining whether the transactions or companies reviewed were truly comparable, and therefore no way of determining whether the implied per share equity value reference range Qatalyst derived reflected the fair value of their shares.

In sum, the Supplemental Disclosures provided plainly material information that was missing from the 14D-9's description of Qatalyst's fairness analysis.  This information was necessary for shareholders to receive a fair summary of the Qatalyst's work (i.e. if Qatalyst only applied the lowest multiples from the range of multiples observed).  This information provided shareholders with the requisite assurance that Qatalyst's analyses were not flawed in this respect. Without disclosure of this information, Qatalyst's analyses were misleading and incomplete.

### d.       The Supplemental Disclosures Explained the Sales Process

Plaintiff also was able to secure Supplemental Disclosures regarding the sales process engaged by the Board leading to the decision to enter into the Merger Agreement, including the disclosure of potential conflicts of interest which could have skewed RetailMeNot's legal and

financial advisors throughout the process.  Disclosures regarding the sales process leading to the Transaction are material because they inform stockholders of the efforts taken by the Board to secure the highest price realistically achievable given the market for the Company.

It is well-settled that stockholders are entitled to an accurate description of the "process" directors used "in coming to their decision to support the Merger." *See Nagy v. Bistricer*, 770 A.2d 43, 60 (Del. Ch. 2000).  "[I]nformation of this kind is self-evidently material to [a shareholder's] decision whether to accept the merger consideration or to seek appraisal." *Id.* "[O]nce [directors] travel[] down the road of partial disclosure of the history leading up to the Merger . . . , they had an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280 (Del. 1994).

Plaintiff obtained several disclosures relating to conflicts of interest on the part of Company management and its financial advisor.  Specifically, the Supplemental Disclosures provided that no member of the Company's management or Board engaged in any material discussions with Harland Clarke or their respective affiliates regarding employment after the Transaction closed. Additionally, the Supplemental Disclosures revealed details regarding the nature of the confidentiality agreements entered into by the Company with Participant A, specifically, that it contained customary "fall away" provisions that would cause the standstill provisions to terminate upon the occurrence of specified events, including the entry into an agreement to sell the Company. Van Gorder Decl., Ex. D.  The disclosure of information regarding the non-disclosure agreements, including especially the prohibition placed on Participant A from taking certain actions regarding the bidding process or even asking for a waiver of the restriction was extremely critical, especially in view of Participant A's apparent interest in a potential transaction.

Non-disclosure agreements that contain standstill provisions that prevent potential bidders from asking for a waiver from the standstill restrictions during the bidding process and after the merger agreement is signed, are known as "don't ask don't waive" ("DADW") standstill provisions. DADW provisions that do not terminate or fall-away, once a merger agreement is signed, so that other bidders who previously were involved in the sale process, can seek to make a superior offer, are generally prohibited. *See Koehler v. Net Spend Holdings Inc.*, No. 8373-VCG, 2013 Del. Ch. LEXIS 131, at *67-71 (Del. Ch. May 21, 2013).

RetailMeNot stockholders would have undoubtedly found it material to know whether or not Participant A was contractually prohibited from making a superior offer to purchase the Company. Shareholders must be made aware of such opacity in order to make an informed decision whether to tender their shares. *See, e.g.*, *Topps*, 926 A.2d at 79 (taking issue with the defendants' failure to disclose the terms of a certain standstill agreement which prevented a potential buyer from bidding). Without such information, shareholders would not know whether an alternative bidder (here, Participant A) was inhibited from fairly competing in the sale process.

### 3.      This Action and the Benefit Are Causally Related

Once a plaintiff demonstrates the first two elements, a meritorious claim and a substantial benefit, as Plaintiff has here, "the burden then shifts to the defendant to prove that the lawsuit did not in any way cause their action which ultimately rendered the suit moot." *Cooperstock*, 820 F. Supp. at 923; *see also id.* at 925 ("Where the stockholder's [] suit has been rendered moot by subsequent action of the defendant the latter has the burden of showing that there was no causal connection . . . in order to defeat the stockholder's claim for legal fees and expenses.").

To rebut this presumption, a defendant must show that the benefit is attributable to other causes. *Id.* Importantly, though, "'the action need not be the sole cause. Where there is more than

one cause, the [Plaintiff] is a prevailing party if the action was a material factor in bringing about the defendant's action.'" *Id.* Defendants bear the burden to show that Plaintiff's actions in no way caused the issuance of the Supplemental Disclosures. *See Lewis v. Gen. Emp't Enters.*, No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464, at *11 (N.D. Ill. Apr. 10, 1992) ("For a causal connection to be established, the lawsuit need not have been the only possible cause or even the primary cause of the corporation's actions.") (citing *United Handicapped Fed'n v. Andre*, 622 F.2d 342, 346-47 (8th Cir. 1980)).

Defendants would be hard-pressed to marginalize Plaintiff's causation here. [14]   The Supplemental Disclosures were clearly a reaction to the Complaint and the Motion for Preliminary Injunction.   Defendants provided material information regarding: (i) RetailMeNot's internal financial projections; (ii) Qatalyst's valuation methodologies; and (iii) details of the sales process, specifically the terms of the confidentiality agreement with Participant A. Defendants issued the Supplemental Disclosures, an action that benefitted their stockholders following the filing of a meritorious suit and other litigious actions taken by Plaintiff.   As this rendered the claims raised moot, it is presumed that the lawsuit caused the actions creating the benefit. *See id.*; *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1080 (Del. 1997).

---

[14]   Indeed, in Amendment No. 5 to the Recommendation Statement, disseminated on May 12, 2017, Defendants states that "in response to the Scarantino Complaint and the Boening Complaint, the Company made certain supplemental disclosures. . .to address deficiencies in the Company's Schedule 14D-9 alleged in those complaints." Van Gorder Decl., Ex. F. The Company then admits that while "[t]he McNally Complaint generally contains the same allegations as set forth in the earlier-filed Scarantino and Boening Complaints. . . . The Company further believes that the McNally Complaint is no longer viable in light of the additional disclosures contained in the Amendment No. 4[.]" These two statements conflict. The gravamen of the allegations set forth by the Actions were cured by the Supplemental Disclosures; each complaint caused the Supplemental Disclosures. It is counterintuitive to acknowledge the effect of the Boening Action, filed one day before, and whitewash the McNally Action, as the two were filed prior to the Supplemental Disclosures.

17

The Supplemental Disclosures at issue in this case were directly tied to this suit. Notwithstanding the pressure applied by the Scarantino Action and the Boening Action, Plaintiff was the sole party who believed Defendants' omissions were egregious enough to warrant enjoinment of the Transaction.   As outlined above, Defendants issued the Supplemental Disclosures shortly after Plaintiff filed his Complaint and Injunction Motion, which demanded such action.  The causal connection is clear and Defendants' anticipated attempt to say otherwise, it is not credible and contradicts their counsel's statements

### B.   The Requested Fee and Expenses Award Is Reasonable

Once the court finds that an applicant is entitled to fees and expenses, it must then determine what amount is fair and reasonable.  *Cooperstock*, 820 F. Supp. at 923.  "'The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed.'  In cases where a common benefit exists, courts have awarded fees based on the lodestar method . . . ."  *Id.* at 926 (citations omitted).  Pursuant to the lodestar method:

> The initial estimate of reasonable attorneys' fees requires the court to first inquire into the hours spent by the attorneys on their services and then multiply those hours by a reasonable hourly rate. . . .  Once the lodestar has been established, the court may then adjust this figure with a "multiplier" to reflect the quality of the attorney's work, the benefit to the client, and the contingent nature of the litigation.

*Id.* at 926-27 (citations omitted).

### 1.   The Additional Material Information Benefited Stockholders

Plaintiff's Counsel seeks an award of $250,000 attributable to the benefit obtained from the additional information contained in the amendments to the 14D-9.  Plaintiff's Counsel have cumulatively spent more than 84.75 hours in the prosecution of this action.  *See* Van Gorder Decl.,

18

Exs. G and H (Declarations of Plaintiff's Counsel).[15]  Applying their reasonable hourly rates,

Plaintiff's Counsel's collective lodestar is $50,941.25.  Plaintiff's Counsel's collective expenses

are $881.29.  Given the benefit conferred (as outlined above) and the contingent nature of

Plaintiff's Counsel's compensation, a premium over counsel's normal hourly rate is appropriate.[16]

The 4.89 multiplier requested here easily falls within the range of implied multipliers that have

been found reasonable in other class actions that conferred similar benefits to a class.  *See In re*

*Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar

multiples of over 4 are routinely awarded by courts."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862

(E.D. Mo. 2005) ("In shareholder litigation, courts typically apply a multiplier of 3 to 5 to

compensate counsel for the risk of contingent representation.") (citing *Vizcaino v. Microsoft Corp.*,

290 F.3d 1043, 1052-54 (9th Cir. 2002) (3.28 multiplier)); *Van Vranken v. Atl. Richfield Co.*, 901

F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier); *Wershba v. Apple Computer, Inc.,* 91 Cal.

App. 4th, 224, 255 (2001) (stating that multipliers can range "from 2 to 4 or even higher"); *Lealao*

*v. beneficial Cal., Inc.,* 82 Cal. App. 4th 19, 24, 52 (2000) (opining that a multiplier in excess of

---

[15]    The lodestar and expenses incurred by Plaintiff's Counsel are documented in the Time and Expense Declarations of Juan E. Monteverde for Monteverde & Associates and Michael Van Gorder for Faruqi & Faruqi, LLP contemporaneously filed herewith as Exhibits G and H, respectively.  As shown in the firm resumes attached to the declarations, Plaintiff's Counsel are experienced in complex litigation such as this and have been appointed as lead or co-lead counsel in numerous nationwide class actions.

[16]    *See Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983), *superseded by statute on other grounds as stated in Daimler Trust v. Prestine Anapolis, LLC*, No.ELH-16-544, 2016 U.S. Dist. LEXIS 75014, at *25 n.5 (D. Md. June 7, 2016) ("[O]n many occasions awarding counsel fees that reflect the full market value of their time will require paying more than their customary hourly rates."); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, C.A. No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *42 (Del. Ch. Jan. 2, 2009) ("[A]n attorney may be entitled to a much larger fee when the compensation is contingent than when it is fixed on an hourly or contractual basis"); *In re Plains Res. Inc. S'holders Litig.*, C.A. No. 071-N, 2005 Del. Ch. LEXIS 12, at *22 (Del. Ch. Feb. 4, 2005) ("It is consistent with the public policy of Delaware to reward this risk-taking in the interests of shareholders.").

3.5 was reasonable and not ruling out class counsel's original request for a multiplier of 8); *Dutchak v. Cent. States, Se. & Sw. Areas Pension Fund*, 932 F.2d 591, 596 (7th Cir. 1991) (affirming a multiplier of 2); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (affirming an award using a multiplier of 3); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (multiplier of 5).

## III.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully submits that a Fee and Expense Award totaling $250,000 is fair and reasonable in proportion to the benefits obtained. Accordingly, Plaintiff respectfully requests that the Court award attorneys' fees and expenses for his counsel in this amount against RetailMeNot and the individual defendants.

Dated: May 26, 2017

Respectfully submitted,

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: jwilson@faruqilaw.com


**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (Bar ID No. 6214)
20 Montchanin Road, Suite 145
Wilmington, Delaware 19807
Telephone: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Attorney for Plaintiff*